*Decision will be entered for the respondent.*

ALFORD J. WILLIAMS, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66915. Promulgated January 24, 1934.

*Kenneth N. Parkinson, Esq.*, for the petitioner.
*George D. Brabson, Esq.*, for the respondent.

OPINION.

TRAMMELL: This proceeding is for the redetermination of a deficiency in income tax in the amount of $9,175.55 for the calendar year 1929.

The questions involved are (1) whether an amount of $35,000 paid to the petitioner was a gift or was part of compensation due him for the sale of real estate, and (2) whether the petitioner is entitled to a deduction of $7,600 as expenses paid by him in promoting the sale.

The petitioner is an individual, residing in Garden City, Long Island, New York. During the years 1926 to 1929, inclusive, he was a lieutenant in the aviation branch of the Navy, being assigned to experimental flying, particularly racing, and being financed to a considerable extent by private capital. During 1929 and for some years prior thereto he was stationed in Washington, D.C. But during that period and particularly during 1928 he made numerous flights back and forth between Washington and New York City, principally to supervise and inspect the construction of a plane to be used for competition in the Schneider Cup races, and also to consult his backers.

The petitioner, in the course of his flights, became interested in the possibility of a location for landing or aviation fields within the New York area. There came to his attention a tract of land

situated on Long Island, owned by the Lannin Realty Corporation of Garden City, which tract later became known as Roosevelt Field. Petitioner considered that this tract would be an excellent airport and believed that he could secure buyers therefor and developers thereof for such purpose. He received authorization from J. J. Lannin, the then president of the corporation, to negotiate for the sale of the property. No agreement was entered into or existed, however, between the corporation or its president and the petitioner, either as to the terms of sale or as to any specific amount of commission. However, petitioner was promised that he would be paid for negotiating the sale, Lannin, the then president of the corporation, stating that he would be amply compensated if he were successful. Lannin died in 1928. Following his death the stock of the corporation was owned in equal proportions by his widow, Hannah Lannin, his daughter, Dorothy Tunstall, and a son, Paul J. Lannin, the latter becoming president of the corporation and having control of its affairs, although he consulted the corporation attorney and also the general manager with respect to the corporation's business affairs. Neither the attorney nor the general manager owned any stock in the corporation. Upon the authorization and assurance with respect to the compensation as above mentioned, the petitioner devoted considerable time and incurred expenses due to the promotion and sale. After the death of J. J. Lannin the petitioner received further assurances from Paul J. Lannin, his son and successor in office, the latter being a schoolmate and an intimate friend of the petitioner, that any arrangements that his father had made would be carried out. However, nothing was agreed in writing with respect thereto.

As a result of the petitioner's efforts he succeeded in interesting prospective purchasers who finally negotiated the purchase of the property in 1929 at the price of $1,900,000. Petitioner was not advised of the completion of the sale, but, learning that the sale had been consummated, petitioner approached Paul J. Lannin, the then president of the corporation, with the object of securing from him a commission for the sale. He demanded $95,000. The usual commission was 5 percent on the sale of such properties. This was a custom recognized in that territory. Lannin told petitioner that his counsel did not recommend the payment of more than $55,000 and that he would not pay more. The petitioner considered this inadequate and unreasonable. He " immediately rejected and decided that it was going to be a question of fight." He also said that he would not stand for it. Finally, after talking for some time, Lannin gave petitioner a check on one bank for $55,000 and at the same time handed the petitioner another check for $35,000 on another bank, both being corporation checks. When the petitioner

received his $55,000 check he signed a receipt in full for commissions due. The total amount of $90,000 was compensation for services in the sale of the property. The petitioner expended at least the sum of $3,000 in connection with the making of the sale, which amount should be deducted from the total amount of commissions received.

The question in this case is purely a question of fact. The testimony is somewhat conflicting. The petitioner testified that he received the $35,000 as a gift, while Lannin, the president of the company, who gave the petitioner the check, testified that it was not a gift but was drawn upon different banks for convenience and was all a part of a commission of $90,000 which they finally agreed was a reasonable amount. There is some conflict, however, even in Lannin's testimony. He wrote an acknowledgment on the bottom of a letter which petitioner had prepared in which the petitioner recited the facts substantially as he testified to them at the hearing, to the effect that those facts were correct. His entire testimony, however, is to the contrary. We have to resolve all the conflicts in the testimony and give such weight to the testimony as we think it is entitled to, and from all the testimony in the record we are convinced that the whole $90,000 was commission paid to the petitioner for his services in negotiating the sale.

It would not seem reasonable to say that a person who is making a demand upon another for money could receive a portion of that money to satisfy his claim and then say that the balance of the amount was a gift, when he was claiming even more than the total amount as being actually due him for services. The petitioner claimed that the corporation owed him $95,000, and $90,000 was actually paid him. Lannin, the president of the corporation, testified that they finally agreed upon $90,000 as being the amount to be paid.

The other feature of the case with respect to the expenses incurred by the petitioner in completing the sale is not without difficulty. The petitioner kept no records of account and testified that he expended approximately $7,600. However, he was engaged in other work at the time and it is difficult to make an allocation or to determine what part of the money expended was really for personal living expenses, what part for business expenses and what part if any should be allocated to the other venture. There is considerable indefiniteness also as to the actual amounts expended. From all the testimony, however, in this regard we have determined that $3,000 was expended in connection with negotiations for this sale.

*Judgment will be entered under Rule 50.*